and I see Ms. Palmer is here. Ashley Janelle Moore-Palmer is here for Jackson. Yes, your honor. Actually, I am no longer with the Attorney General's office. I am with the Georgia Advocacy Office and I'm representing the Georgia Advocacy Office and the named plaintiffs in this action. Thank you. And why don't we begin? Ms. Palmer, you may begin your argument. Thank you, your honor. And good morning to you all. May it please the court. My name is Ashley Palmer and I represent all of the appellants in this matter. The Supreme Court has rejected remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution and that's Brown v. Plata. In July 2019, a preliminary injunction was entered against the Fulton County Sheriff and four of his employees as a result of two alleged constitutional violations that the court found after hearing three days of evidence and testimony regarding the treatment of seriously mentally ill female inmates in the sheriff's custody. Although the district court abused its discretion in entering this preliminary injunction, appellants recognize that this is a highly deferential standard. By contrast, there isn't any question that the district court's order fails to satisfy the need, narrowness, intrusiveness factors found in the Prison Litigation Reform Act. Further, the court did not make its order final and thus it expired by operation of law 90 days after it was entered on July 23rd, 2019. I'll first speak to the issue of the underlying order being expired. Despite the district court's belief, this order was not finalized upon the entry of the court's September 23rd, 2019 addendum order. Of the cases that have sought to define what the PLRA means by making a preliminary injunction final, both the Ninth Circuit in Mayweathers v. Newland and the Third Circuit in Victory v. Berks County have interpreted a final preliminary order as being a prospective or permanent order and appellants believe this is the correct reading. If the district court still anticipates having a trial on whether a permanent injunction is necessary, and that's what all the parties are anticipating, then the preliminary injunction that is in place is by definition not a final order. We think the record which was recently supplemented is sufficient for this court to determine whether district court judge was correct that the preliminary injunction is a final order for the purpose of avoiding the 90-day restriction. Because the language of the statute is clear, appellants ask for determination by this court that the injunction has expired. But we also recognize, Your Honors, that the mootness doctrine that there's a question about the mootness doctrine, its applicability in this case. We would argue pursuant to Mayweathers v. Newland, which is a Ninth Circuit's case that the 11th Circuit cites approvingly in U.S. v. Florida Secretary of Corrections, which states that a district court does not violate the terms of the PLRA by entering a second injunction after the first has expired. Nothing in the statute limits how many times the preliminary injunction can be entered. In this case, the district court could enter another preliminary injunction, one that may very well state whether the court intends to finalize the order, but also one with the same level of intrusiveness and over-broadness that we have here. Appellants fear that the district court will be guided by the scope of relief in the order in question here, unless this panel issues the appropriate correction. Let me be clear about the mootness argument you're making. If we were to agree with you that the injunction under the statute expired after 90 days because it wasn't made a permanent injunction, then on remand, the district court would have the opportunity to issue a new preliminary injunction or be required to perform the analysis to issue a permanent injunction at that point. Well, Your Honor, he would be permitted to enter another preliminary injunction. And this goes to my second argument to your second question, which is the analysis that he would have to go through. And for both the preliminary injunction and prospective relief, he has to go through the need, narrowness, intrusiveness analysis. And so it would be the same analysis as laid out in the PLRA. It applies both in the preliminary injunction context as well as in the context as prospective relief. He also, Judge Grant, could immediately issue prospective relief. He could immediately put into place a permanent injunction, which pursuant to the PLRA would be in place for a two-year period at a minimum, depending upon the appellants coming back and making an argument that they believed at that time it should be extinguished. And so he could do both, Your Honor, to answer your question. So it looks like from the statute that you may really like some things about 3626A1C2, which is the 90-day limit, but you may not like that it looks like it's not requiring specific findings of the sort that are required in A1. Can you talk to me about if you've noticed any differences? It appears that perhaps preliminary injunctive relief, the judge certainly must conclude that those factors are met, but there's not the same requirement for issuing findings there. Thank you, Judge, and I understand your question. And what I would say to that is in this instance, although we don't believe that the preliminary injunction was made final, the district court judge and our supplement that we made to the record, as Your Honors have probably seen, believes that it was. And so accordingly, based upon that, his belief that it was a final order, he is required to make those findings that are found in A1. In order for it to be made final, not only does he have to affirmatively make it final, he also has to go through that need, narrowness, intrusiveness, which this court has stated in its case law requires that they make those particularized findings. And so does he need to make those findings and then the top of the order says permanent injunction rather than preliminary injunction? Is that, in your view, what needs to happen to transform the preliminary injunction into a final order? I believe, Your Honor, that there has to be some language that puts the appellants on notice that this is in fact not just a preliminary injunction but a permanent one. There's been other case law that says the case will, that the injunction will be in place until a final order on the underlying case is issued. We have nothing like that here. There was nothing where the court stated that we had any awareness that our clients, that beyond the 90-day period, that they would still be required to comply with the mandates of the preliminary injunction. As it concerns the preliminary injunction, Your Honors, and the PLRA, as Your Honors are well on remedial relief that a court may impose on a jail or a prison. It must be, as Judge Grant and I have been speaking about, narrowly drawn and not intrusive. However, here the court went too far in dictating to the sheriff how he should remedy the alleged constitutional violations, which he found to be twofold, a deliberate indifference, which we disagree with, obviously, and also an ADA claim. This court recently has in Huffer, the Secretary of Florida Department of Corrections, discussed at length the deliberate indifference standard, but even assuming based on the facts that the court had in front of it that it was accurate, that it was correct in making those findings. The relief that it ordered, the remedial relief, is the issue with which that we have here. In Lewis v. Casey, the Supreme Court noted that its opinions have lamented courts becoming enmeshed in the minutia of prison operations in the name of the Constitution, and that's because, as this court held in Prison Illegal News v. Secretary of Florida Department of Corrections, under Turner v. Safely, a Supreme Court case, we owe wide-ranging and substantial deference to the decisions of prison administrators because of the complexity of prison management, the fact that responsibility, therefore, is necessarily vested in prison officials, and the fact that courts are ill-equipped to deal with such problems. The problem— I think these allegations are, frankly, pretty horrific. How—let's assume, for purposes of argument, which I know you don't actually agree with, but let's assume that it's all true and there is a substantive violation. How could the court's order be more narrow yet less intrusive to the specific operations of the prison? It seems like those are—or the jail—it seems like those are somewhat in tension. To answer your question, Judge Grant, I think Lewis v. Casey speaks to this, too, and it talks about the deference that should be given to prison officials. In our particular case, I understand that the facts, as they were presented to this court, that, yes, they do come off as being quite horrific, but the fact of the matter is the issue before the court was a stumple wound, which was, is keeping women in a cell for longer than 22 to 23 hours deliberate indifference, and is it exacerbating or is it causing their mental health issues, their serious mental health issues that already existed to be further exacerbated? That was the issue. The court went in a broad scope to address many other issues that were not before it, issues that plaintiffs presented at the lower level in terms of, you know, their discomfort with the fact that sometimes the toilets leaked or their upsetness with the temperature within— Sometimes the toilet leak seems like a pretty dramatic understatement. Wouldn't you agree? Well, I would say, Your Honor, that there was evidence that was shown that, yes, the toilets leaked because the inmates were putting things down in the toilets, and so, yes, there were drast things that were happening, floodings, things like that that happened, I would submit to Your Honors, typically in a jail and a prison setting, and the jail was managing it the best that they could. In terms of letting people out, though, which is the essence of the deliberate indifference, I think to answer Your Honors question in terms of the four hours that the court mandated, the court even set itself in its order. It wasn't finding that that was a constitutional mandate, but what is required per Lewis v. Casey is to give deference to the sheriff, and so the question should have been asked of the sheriff. I have found that you are inviolative of the constitutional deliberate indifference standard. What I'm saying to you is, Sheriff, I need you to go back with your jail officials and bring me a plan to allow us to ameliorate what's happening here, and it may not have been four hours, because the fact is that, especially now, as we know in the light of COVID, there are many difficulties and many issues that the jails deal with on a daily basis, and so simply- So, counsel, what was the alternative remedy proposed by the sheriff? The sheriff didn't have an opportunity, Judge Wilson, to propose an alternative. What the judge did was accepted a four-page order from the plaintiffs that they presented, at the conclusion of the hearing, that he signed in everyone's presence, and then he asked, and then he indicated that he would make more particularized findings. The appellants, defendants in the underlying case, then filed a motion for reconsideration. In response to our motion, the plaintiffs then presented the court with the 54-page addendum order that your honors have before them, and he signed that without any alterations to it. And so, is my understanding correct that the order also does provide a safety valve for the sheriff to ensure deference to jail administrators when it's necessary for a penological purpose? It is a very limited-in-scope safety valve, Judge Wilson, and I say that because even though the court said that I recognize that there are valid bases by which you may have to keep someone in a cell for longer than 24 hours, you still have to not only document your reasons for doing that, but someone at a rank, at either lieutenant or captain or higher, has to assess why you made that decision. And then, after that, you have to bring in one of your medical professionals to ensure that the decision was rightfully made by your correctional officers. And so, again, that goes to the need, narrowness, intrusiveness that I've been speaking of, Judge Wilson. The fact of the matter is, is that when the court steps itself so far into stepping in the shoes of the sheriff and the prison officials, that is what the PLRA and Congress said cannot stand. And so, I see that my time is up. I will come back. I have reserved some time for rebuttal. Thank you. All right. Thank you. We'll hear from Ms. Orland on behalf of the Georgia Advocacy Office. Thank you, Your Honor. May it please the court. My name is Devin Orland, and I represent the appellees in this action. After three days of evidence and argument, the district court ruled from the bench that despite his belief that courts should be cautious about entering an injunction, that this was the type of case that required court intervention, as he found defendants' treatment of women with psychiatric disabilities to be both repulsive and shameful. The district court's decision was well supported by the undisputed record that women with serious psychiatric disabilities were left in their cells for 22 to 24 hours a day for days, weeks, and months on end. The cells were covered in bodily fluids, rust, and mold. In these conditions, they deteriorated, leaving them incoherent, screaming unintelligibly, laying catatonic, banging their heads against walls, and repeatedly attempting suicide. Dr. Jeffrey Metzer, one of the foremost experts in the field of forensics, put forth undisputed testimony that the bare minimum was to provide the class with four hours of out-of-cell time, five days a week. This still leaves the class plaintiffs in lockdown for 148 of the 168 hours in each week. The court provided appellants with the opportunity to devise their own plan with how to implement this court order. The court entered a brief written order on that same day. In that order, the court stated it would enter into a more detailed order to meet the requirements for 18 U.S.C. 3626A2. The court did just that, and entered into a 54-page order detailing its legal and factual findings, and specifically making the need-narrow, least-intrusive determinations as defined by the statute, and it did so within the 90 days specified by law. The district court's decision should be affirmed. I'll first address the validity as to the district court's grant of the preliminary injunction, and then we'll address the impact of 18 U.S.C. 3626A2. I further note that while appellants inaccurately assert that the addendum order expired by operation of law, they also acknowledge the likelihood that the district court would enter a new operative order. The district court did, in fact, do so, and appellants chose not to appeal this order, and as a result, the operative injunction order is not really before this court. As to the validity of the order, as the court has already noted, the conditions were widely described by the plaintiffs in this case through affidavits, expert testimony, standards of harm, scientific journals, the negative impact to security as a result of the sheriff's conduct, photographs, and logbooks. All of this evidence was undisputed. The county offered two theories, the first being what they were doing was fine, and second, that they were working on a plan to remedy things. There was no disputing any of the expert testimony that locking these women up in these conditions, in fact, impaired their psychiatric condition and made it worse. There was no contesting testimony that very little psychiatric therapeutic interventions occurred, and there was further no testimony that the conditions that were displayed were anything other than what they were depicted to be by the plaintiff's complaint, and that testimony proffered by the plaintiffs in the case. The initial grant of the plaintiff's motion for preliminary injunction was entered on July 23rd after the three-day evidence described, and then the court entered into that detailed order on September 23rd, 2019. The order itself detailed evidence which produced the eyewitness accounts of the conditions of the facility and failure to treat persons experiencing psychiatric disabilities. It further outlined that people who didn't experience psychiatric disabilities were allowed out of their cells and given programmatic opportunities that people with psychiatric disabilities were not. It outlined further the impact of the conditions. They especially sensed the women were locked in their cells for such a long period of time, and the court analyzed each prong of the preliminary injunction standard, outlined the facts that supported the ruling, and found in favor of the injunction at every term. The court specifically outlined its compliance with 3626A2 and its need-narrowness-intrusive requirements. To adopt the appellant's view of 3626 in this case would, if in effect, cause district courts and plaintiffs to have to file a new preliminary injunction every 90 days. The purpose of the Prose and Litigation Reform Act was to alleviate the burdens on courts and to bring meritorious claims to the tribunal. Further, the provisions requiring the need-narrowness-least-intrusive findings were to avoid courts from having injunctions in place for years on end without specific findings of the court. The district court in this case complied specifically with the requirements and said it did so and highlighted it did so in its order, and as a result, entered into a compliant order. Do you think that the court's action effectively converted the preliminary injunction into a permanent injunction? I do not, Judge Grant, and the reason I don't is, one, the court didn't say it was entering a permanent injunction, and I don't believe it's required to do so. Specifically, it's required to make the preliminary injunction order final, as the court highlighted in United States v. Secretary of Florida Department of Corrections, where the court in that case did vacate the district court's order specifically saying that it didn't finalize the preliminary injunction. The term finalizing an order making findings allows for a court to enter an initial order to alleviate what in this case certainly were dire situations quickly, while also allowing the court to craft a remedy that is, in fact, need-narrow-least-intrusive in compliance with Prison Litigation and Reform Act through a thoughtful review of the record presented. The defendants in this case will still have an opportunity to try the case. This was a preliminary order. No discovery had occurred, and discovery is ongoing. They will have an opportunity to file for summary judgment to disprove the facts that were presented at the preliminary injunction hearing, and further, to dispute any facts that were presented through affiance as opposed to cross-examination and direct testimony. This was not a final order. This was a preliminary injunction, and this was a finalization of the judge's preliminary injunction order. Moreover, if you look to the canons of statutory construction to determine that the addendum order was anything other than a preliminary injunction order, it flies in the face of how a statute should be interpreted. So the court says unless the court makes the order, meaning the preliminary injunction order, comply with the provisions of A-1, it expires within 90 days. That reference refers to the preliminary injunction initial order that is often issued in these types of cases. I further note that appellants claim that they didn't have notice that this order would be in effect in greater than 90 days is belied by the fact that the district court referenced 3626A-2 twice, first in its initial order and then in its addendum order. Don't we need to, though, because I think everyone agrees that the PLRA is not the most artfully drafted statute around. But don't we have to look at 3626B, I think, to give us some context for what Congress may have been trying to accomplish with the section that we're mostly focused on? And would taking that into account give some evidence that perhaps keeping the injunction as a preliminary injunction wouldn't allow the provisions under B to come into effect, the two-year termination and so forth? I certainly understand the court's point, but I think that if you look to B, it defines the terms for which a permanent injunction is terminated. The whole provision deals with permanent injunctions. If, in fact, the intent was to eliminate a preliminary injunction within 90 days, then the Congress would have said after 90 days, the court must enter a permanent injunction. There's no reason for it to say to make the order final. Instead, it would say it expires after 90 days unless the injunction becomes permanent. That's not what the court did or what the legislature did. Instead, it supported a provision to terminate longstanding consent decrees, which, as the court knows, were rampant at the time the PLRA came into being. But also to tell courts, look, you've got to look at this every two years. You can't just keep on going. So there are two provisions. One is the 90-day—you've got to make this injunction for 90 days unless you make these findings. Then there are the federal rules of civil procedure, which require discovery to actually take place over a period of time. Then you try the case. And if you're going to enter a permanent injunction, you have to comply with these other things. A preliminary injunction is never intended to last for years and years on end, and that's some of the reason that the court issued this or the legislature passed this rule. But they can't possibly expect discovery, which even in a truncated discovery schedule, is going to happen in 120 days. So you have to take it in the context of how the litigational process occurs. And in this case, the litigational process is ongoing. We would have already tried the case by now had we not all been stalled a bit by the pandemic. So I think the statute in the context of the greater judicial system makes perfect sense, which is you have a preliminary injunction. You need to make need-nearness, least-intrusive findings. In order for that injunction to stay in effect beyond that 90 days, court, you need to do your job. You need to actually make these findings and do the work to keep something preliminarily from creating more harm. And then once you try the case, you don't get to keep an injunction and stay in a jail or prison forever and ever, amen, without similarly continuing to re-review. So you would say that the court, that under A1C2, the court can issue a preliminary injunction almost immediately with, I'm not saying that we would suggest this, but essentially with no findings. They can just say, this is horrible. It's got to stop now. And unless they go through the steps required under A1, then that initial preliminary injunction expires. But if they go through the steps required in A1, then that becomes a final preliminary injunction that can remain in place as the permanent injunction litigation proceeds? That's right, Your Honor. And in fact, if you look at every single case relied on by the appellants in this action, it refers to the court not making the need-nearness-least-intrusive analysis, including this court in the United States versus Secretary of the Florida Department of Corrections. Every case where an order has been vacated as determined to be not expiring in that 90 days, the court specifies that the district court did not make those findings and therefore not finalizing the preliminary injunction order. And if discovery kind of drags out, let's set aside the pandemic, which I think is a pretty unusual situation. But under ordinary circumstances, what remedy under your reading of the statute do prison officials have if a preliminary injunction just stretches for years, which seems to be contrary to what the PLRA is trying to make happen? I think they can always go back to the district court and say we've we've mooted the claim. They can say we've mooted the claim or this injunction is no longer meritorious because I mean, there's no reason that they can't go and move to vacate the preliminary injunction. It just doesn't automatically happen. So I think if you look at the relevance that statutory construction issues in this case, you have to take a look at the wording of the statute and the statute itself says unless the preliminary injunction unless the order, meaning the initial order on preliminary injunction is. Is goes through the 362682 language, then it vacates and that unless only can refer to that last piece in conclusion, I would just point to the court that the evidence and testimony in this case was largely undisputed. The only all the experts, all the all the practitioners that testified at this hearing said the minimum you can get out. Is 20 hours a week, which still leaves an awful lot of time in lockdown and there wasn't a single solitary person who said it. It was healthy. It was safe. It was treatment. It was appropriate or it wasn't deliberate indifference. For these women to be locked down in the manner that they were locked down and there were a lot of factors in that, including the cell conditions. And if you look at the district courts addendum order on pages 1551 he outlines those conditions and the why. It was further undisputed but and documented by hundreds of photographs the conditions that these women were asked to live in all of the testifying experts agree that women with psychiatric disabilities are harmed by the segregation that this and this is exacerbated by the physical conditions and the only remedy offered by any expert was that the minimum was 20 hours out of cell. The district court rightly weighed these undisputed facts and the testimony that there was no security benefit to the segregation and made concrete and need narrow least intrusive findings within the 90 days required by statute as the district court's order be affirmed. I'm going to drag you back into such interpretation with one more question before you sit down. Absolutely. Thank you. So the preliminary injunction section says that it expires 90 days after its entry unless the court makes the findings required and makes the order final before the expiration. What do you think that what do you think is required to make the order final besides those findings. What are we to make of that and I think the court needs to actually issue the order. So it can go through the factual analysis not just say you need there and it's least intrusive but do what the court did in this case and say we made that I'm complying with 36 26 8 2 and and therefore the order. I mean I don't think the court needs to make a magic word five say the word final. This court has never found that magic words were required but again it's referring to the order. So it doesn't just say needs to make least least intrusive need narrows findings it says an issue in order. You can't just stay up from the bench. You need to actually do the detailed analysis and put it in an order. Thank you. Thank you Your Honor. Thank you Miss Orland. Miss Palmer you preserved some time for a vote. I did. Thank you Judge Wilson. I wanted to follow up on the last question that Judge Grant was asked which had to do with the and to answer that question. The and is there for a reason. I mean it's not just superfluous not just does the court have to make the particular last findings. It also has to make it final and the reason for that is so that all parties specifically the ones upon whom the the injunction applies are aware of the fact that this is not pursuant to the PLRA just the 90 day order but it's one that has been finalized. That is not what occurred here. I think Miss Orland's trouble in answering that question because the fact is that the judge did not stay here and he acknowledged in the transcript that is now before your honors in the supplement that he did not state affirmatively or put anyone on notice that this order was going to be in place post the 90 days. That may have been his intent. That may have been what he was thinking in his head but unfortunately appellants could not operate pursuant to what the judge may have been thinking without actually being articulated in the order in some form. What's your response to the suggestion that it's unrealistic to think that a permit that the litigation required and the discovery required for a permanent injunction could realistically happen in 90 days or less? I actually don't think that that's an unreasonable thought at all your honor. There are many district courts and also appellate courts that have found that that was the very behind why the PLRA was put into place and that was to take a very long drawn out process that we all know how civil litigation is and truncate it for the very reason that jails and prisons cannot continue to be in limbo as we have been for almost two years. When July of 2021 rolls around next year that would have been exactly two years from the time when the judge put the original order in place and the fact is that would be the same amount of time for a permanent injunction. And so it flies in the face of the purpose behind the PLRA and there are district courts that have said that in fact that is the very essence of why it puts it at 90 days. That's why Mayweather says that yes you may have to come back every 90 days to prove up your case again and though that may seem counterintuitive to the way that litigation is brought it does go to the fact that as the Supreme Court has found that prison and jail officials have to be able to properly oversee and provide the necessarily operations that they need for their jails and prisons. And when monies are being reallocated when you're having to go before the board of commissioners which we haven't done to finance and staff is being upheaved to facilitate all that the judge has asked the sheriff and his personnel to do that presents a problem for jails and prisons. What about the facts? What do you say about the fact that the injunction that we have before us has apparently been updated or there's a new injunction? What are we? I understand that what I would say is first of all that it still relates back to the original order. There have been instances in other courts specifically I think of a court out of district court in Alabama that had the very same case that came before it and even though it came back and it made a modification the question was whether it related back and I believe that it did. Furthermore what I would say your honor is that the updated ruling is absolutely flagged in the face of the intrusiveness the least intrusive that one is supposed to do when you're telling a sheriff how long you have to bring a person out for and when that person is out during that four hour time what they are obligated to do which is to spend three hours giving them therapeutic activity and one hour ensuring that they get outdoor recreation that we're supposed to go through the processes of ensuring that they understand what it means to clean theirself and educating them about how to keep themselves clean and going through all of the law books apparently the judge because the plaintiff didn't like the way the sheriff was maintaining his law books so we have to put in another process to maintain the law books to document how people are brought up for free time. That is absolutely not what Lewis v. Casey speaks to which is the deference that is supposed to be given to prison and jail officials. A court is not in the position to be able to say what happens on a day-to-day basis especially in such a fluid environment at the jail which is not a prison things are happening every day in that environment and for the judge to put this very onerous order on us which I would note and Ms. Orland wasn't able to contest there is no contesting from the other side this is not the least intrusive it was not if it had been the sheriff would have been consulted it had been his thought and would have been taken into consideration if it had been the motion for reconsideration that we brought back before the court would thank you thank you your honors we can just ask that um you rest on our briefs and that you would find that the structure is not only inspired but cannot be revived thank you all right thank you Ms. Palmer and Ms. Orland the court is in recess until nine o'clock tomorrow morning